UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ABIODUN SODIPO,

    Plaintiff,

    v.

RON ROSENBERG, et al.,

    Defendants.

Case No. 13-cv-04856-JD

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 17

Plaintiff Abiodun Sodipo, a Nigerian citizen who resides in the United States, appeals from a decision by the United States Citizenship and Immigration Services ("USCIS") denying his petition for an immigrant visa based on employment. A petitioner seeking an employment-based immigrant visa under 8 U.S.C. § 1153(b)(2)(A), as Sodipo does, typically must have a job offer in hand from an employer in the U.S., as well as a "labor certification" from the Department of Labor stating that workers already in the United States are not available to do the job and will not be adversely affected if the visa is granted. *See* 8 U.S.C. § 1153(b)(2); 8 U.S.C. § 1182(a)(5)(A)(i); 8 C.F.R. 204.5(k)(4)(i). Sodipo has neither a job offer nor a labor certification, but contends that he is entitled to a waiver from these requirements under 8 U.S.C. § 1153(b)(2)(B)(i), which allows dispensing with these prerequisites when doing so would be in the national interest. The defendants -- USCIS and the chief of its Administrative Appeals Office ("AAO") -- move for summary judgment on all of the counts in Sodipo's complaint. The Court grants the motion.

## BACKGROUND

According to a 2005 application for labor certification submitted by his then-employer, Sodipo holds a Bachelor of Science degree in Electronic and Electrical Engineering from Obatemi Awolowo University in Nigeria and a Master of Science degree in Electrical Engineering from the

University of New South Wales in Australia.  *See* Administrative Record ("A.R.") at 144, Dkt. No. 12.  After earning his master's degree in 1998, Sodipo came to the U.S. and worked as a Technical Support Engineer at VPNet Technologies from 2000 to 2002; then as a Network Support Engineer for AEKO Consulting from 2002 to 2004, and thereafter as a Software Support Engineer for Caymas Systems, providing support to customers and communicating customer feedback to the Engineering department.  *See* A.R. at 142-43.  Sodipo's employment with Caymas was terminated on February 23, 2006 -- he claims in retaliation for making a complaint of discrimination -- and his employer-sponsored visa application was abandoned.  *See* A.R. at 306.

After leaving Caymas, Sodipo says he refrained from working until June 28, 2010, when he filed a petition with USCIS seeking an immigrant visa based on employment under 8 U.S.C. § 1153(b)(2)(A).  A.R. at 80.  That statutory provision governs so-called "second preference" employment-based immigrants, who qualify by virtue of either being "members of the professions holding advanced degrees or their equivalent" or "who because of their exceptional ability in the sciences, arts, or business, will substantially benefit prospectively the national economy, cultural or educational interests, or welfare of the United States."  8 U.S.C. § 1153(b)(2)(A).[1]  The statutory provision also usually requires the alien to have a job offer, but Sodipo, who was not employed at the time he filed his petition, argued that he qualified for a national interest waiver from this requirement under 8 U.S.C. § 1153(b)(2)(B)(i).

On January 11, 2011, USCIS issued a decision concluding that Sodipo had not established that he qualified for a national interest waiver.  It applied a test set forth by the Board of Immigration Appeals ("BIA") -- the highest administrative appellate body charged with interpreting the immigration laws -- which requires that three factors be shown in order to obtain a national interest waiver: (1) the alien must seek employment in an area of substantial intrinsic merit; (2) the proposed benefit to be provided by the alien must be national in scope; and (3) the

---

[1] "Second preference" immigrants are distinguished from "first preference" immigrants (aliens with extraordinary ability, outstanding professors and researchers, and certain multinational executives and managers), 8 U.S.C. § 1153(b)(1), and "third preference" immigrants (skilled workers, professionals with baccalaureate degrees, and certain unskilled laborers), 8 U.S.C. § 1153(b)(3).

1  petitioner "must persuasively demonstrate that the national interest would be adversely affected if
2  a labor certification were required." *In re New York State Dep't of Trans.*, 22 I. & N. Dec. 215,
3  217-18 (BIA Aug. 7, 1998) ("NYSDOT").  USCIS found that Sodipo had not shown that the
4  proposed benefit he would bring would be "national in scope" (the second prong) and that
5  requiring labor certification would adversely affect the national interest (the third prong). A.R. at
6  190-93.

7  Sodipo appealed this denial to the AAO, which found in an April 2, 2012, decision that
8  Sodipo (contrary to the decision below) would be able to provide a benefit that was "national in
9  scope," but concluded that denial of Sodipo's petition was still proper because he had not shown
10 the third prong -- that requiring labor certification would adversely affect the national interest.
11 A.R. 26-31.  It also dismissed Sodipo's appeal on the alternative ground that he had failed to
12 submit an ETA-750B form with his up-to-date employment history; instead, he had submitted a
13 photocopy of his ETA-750B from his employer-sponsored application in 2005.

14 Sodipo then filed a first motion for reconsideration of the AAO's decision.  The motion
15 was denied by the AAO on December 28, 2012.  A.R. at 12-17.  The AAO's decision rejected
16 Sodipo's arguments that: (1) his prior work experience was sufficient to satisfy the third prong of
17 the *NYSDOT* test; (2) *NYSDOT* impermissibly imposed requirements on aliens beyond those
18 intended by the statute in violation of *Kazarian v. INS*, 596 F.3d 1115, 1121-22 (9th Cir. 2010)
19 (holding that the AAO erred by imposing evidentiary requirements not found in statute); and (3)
20 he was excused from submitting an up-to-date employment history with his ETA-750B form
21 because of his lack of employment subsequent to his prior form.  *Id.*

22 Sodipo filed a second motion for reconsideration, largely retreading the same ground he
23 had in his previous submissions.  A.R. at 22-23.  The AAO denied the second motion on
24 September 19, 2013.  A.R. at 1-5.  On October 18, 2013, Sodipo launched this case by filing a
25 complaint asking the Court to set aside the agency's determination.  *See* Complaint, Dkt. No. 1.
26 On June 16, 2014, defendants filed a motion for summary judgment, which is now fully briefed.
27 *See* Dkt. Nos. 17, 18, 20, 21.
28

3

## LEGAL STANDARD

"Generally, judicial review of agency action is limited to review of the record on which the administrative decision was based." *Partridge v. Reich*, 141 F.3d 920, 926 n.4 (9th Cir. 1998). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *City & County of San Francisco v. United States*, 130 F.3d 873, 877 (9th Cir. 1997) (citation omitted). Because the presence of the administrative record, which the parties have stipulated to, usually means there are no genuine disputes of material fact, it allows the Court to decide whether to set aside the agency determination on summary judgment without a trial. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam); *Hunter v. Leininger*, 15 F.3d 664, 669 (7th Cir. 1994) ("The motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record.").

An "agency action may be set aside only if 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Family Inc. v. USCIS*, 469 F.3d 1313, 1315 (9th Cir. 2006) (quoting 5 U.S.C. § 706(2)(A)). Our circuit has "held it an abuse of discretion for the Service to act if there is no evidence to support the decision or if the decision was based on an improper understanding of the law." *Tongatapu Woodcraft Hawaii Ltd. v. Feldman*, 736 F.2d 1305, 1308 (9th Cir.1984) (internal quotations omitted).

## DISCUSSION

### I. JURISDICTION

The Court's first task is to determine whether this action is properly before it. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The Court's obligation to determine whether it has subject-matter jurisdiction applies even when, as is the case here, the parties agree that it does. *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 850-51 (1986) (holding that lack of subject-matter jurisdiction cannot be cured by the consent of the parties).

The parties suggest that the Court has jurisdiction under the Administrative Procedure Act ("APA"), which gives district courts original jurisdiction to review agency actions. *See* 5 U.S.C.

§ 704. Jurisdiction under the APA does not extend, however, to agency actions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This exception "is applicable in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). At first blush, this may seem to be one of those rare instances, for the operative statute gives the Attorney General broad and standards-free discretion in deciding whether to issue national security waivers:

> Subject to clause (ii), the Attorney General may, when the Attorney General deems it to be in the national interest, waive the requirements of subparagraph (A) that an alien's services in the sciences, arts, professions, or business be sought by an employer in the United States.

8 U.S.C. § 1153(b)(2)(B)(i). Were this the last word on granting national security waivers, it is likely the Court would lack jurisdiction over this case because of the lack of any meaningful standard against which to judge the agency's decision, as at least two other courts have concluded. *See Zhu v. INS*, 300 F. Supp. 2d 77, 80 (D.D.C. 2004); *Talwar v. INS*, No. 00 CIV. 1166 JSM, 2001 WL 767018, at *7 (S.D.N.Y. Jul. 9, 2001).

But as noted earlier, the BIA has in *NYSDOT* put some muscle on the skeletal statutory language, and that decision has been used as precedent by the agency with respect to national interest waiver applications, including in this case. *See* A.R. at 3, 26, 191. While USCIS's discretion may have been unfettered prior to *NYSDOT*, once it "announces and follows … a general policy by which its exercise of discretion will be governed," an irrational departure from that policy can be reviewed by courts pursuant to the APA. *See INS v. Yang*, 519 U.S. 26, 32 (1996); *see also Spencer Enters. v. United States,* 345 F.3d 683, 688 (9th Cir. 2003) ("Even where statutory language grants an agency unfettered discretion, its decision may nonetheless be reviewed if regulations or agency practice provide a meaningful standard by which this court may review its exercise of discretion."). As *NYSDOT* gives the Court standards to apply in evaluating the agency's denial of a national security waiver, this case is not within the "agency discretion" exception to jurisdiction under the APA. *See Repaka v. Beers*, 993 F. Supp. 2d 1214, 1216-17 (S.D. Cal. 2014); *Mikhailik v. Ashcroft*, No. C 04-0904 FMS, 2004 WL 2217511, at *5 (N.D. Cal. Oct. 1, 2004).

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Sodipo seeks to set aside USCIS's denial of his visa petition on three grounds, each corresponding to a claim in his complaint:  First, he claims that the fact that his educational attainment exceeds the minimum required in his field, as well as the fact that he has experience in cybersecurity -- a field he claims is important to the national interest -- entitles him to a waiver.  Second, he argues that submitting a photocopy of his ETA-750B from 2005 with his application instead of attaching a new ETA-750B was sufficient under the statute, and that it was improper for USCIS to require a new ETA-750B.  Third, and finally, he argues that labor certification should not be required because there is a shortage of workers in his field.  Defendants move for summary judgment on all three counts.

### A. Do Sodipo's Qualifications Entitle Him to a National Interest Waiver?

The only factor in the three-part *NYSDOT* test that the parties dispute is the third one: whether Sodipo has "persuasively demonstrate that the national interest would be adversely affected if a labor certification were required."  *NYSDOT*, 22 I. & N. Dec. at 218.  Sodipo argues that he qualifies because he seeks employment in the field of cybersecurity, *see* A.R. at 18, which he says has been identified by the president as being "critical to the national interest." *See* Dkt. No. 18 at 6.  He also argues that the fact that he worked at VPNet Technologies -- a developer of virtual private networks used in encrypting communications on the Internet -- and at Caymas Systems -- a developer of secure access gateways -- weighs in favor of his satisfying this prong, as does the fact that he has a master's degree in a field in which the minimum qualification required is a bachelor's degree.

The interpretation of the national interest waiver statutory provision embodied in the *NYSDOT* test is the one this Court must apply, because BIA's interpretation of the statutes it enforces is entitled to deference from the courts under the doctrine associated with *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 842-44 (1984).  *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (holding that the BIA's interpretation of "serious nonpolitical crime" in the immigration statute was entitled to deference); *Arctic Ice Cream Novelties, L.P. v. Reno*, 134 F.3d 376, at *2 (9th Cir. 1998) (unpublished) ("Because 'national interest' is a general term of no

precise meaning and Congress has expressed no specific intent with respect to its meaning, we must defer to the INS's interpretation so long as it is not arbitrary or capricious. We cannot say that it is.") (citation omitted).

The principle underlying the *NYSDOT* decision is a sensible one: the requirements for a national interest waiver must exceed the ordinary requirements for a second preference employment-based immigrant visa under 8 U.S.C. § 1153(b)(2)(A) -- namely advanced degrees or their equivalent or "exceptional ability in the sciences, arts, or business." Otherwise everyone who qualified for a second preference immigrant visa would automatically satisfy the criteria for a national interest waiver, rendering the requirements of a job offer and labor certification superfluous. Thus, the BIA has held that to meet the third prong, the petitioner "must establish that the alien will serve the national interest to a substantially greater degree than would an available U.S. worker having the same minimum qualifications." *NYSDOT*, 22 I. & N. Dec. at 218. "Because, by statute, 'exceptional ability' is not by itself sufficient cause for a national interest waiver, the benefit which the alien presents to his or her field of endeavor must greatly exceed the 'achievements and significant contributions' contemplated in the regulation at 8 C.F.R. § 204.5(k)(3)(ii)(F)." *Id.*

In addition, the qualifications needed for a national interest waiver must be different from those needed to satisfy the normal requirement of obtaining a labor certification.[2] Otherwise, there

---

[2] It is unclear from the statutory language whether labor certification is actually a requirement for second preference petitioners under 8 U.S.C. § 1153(b)(2)(A). The neighboring provision, which applies to skilled workers and professionals, 8 U.S.C. § 1152(b)(3), contains an express requirement that labor certification is required, *see* 8 U.S.C. § 1152(b)(3)(C), but no such requirement appears in 8 U.S.C. § 1153(b)(2). And although the statutory provision describing the labor certification requirement -- 8 U.S.C. 1182(a)(5)(A)(i) -- provides that "[a]ny alien who seeks to enter the United States for the purpose of performing skilled or unskilled labor is inadmissible" without a labor certification, Sodipo does not seek to enter the United States; he is already here. Three courts of appeals, including our own in *dictum*, appear to have found that the labor certification requirement applies to petitions under 8 U.S.C. § 1152(b)(3), although none analyzed the statutory language in great depth. *See Kazarian v. USCIS*, 596 F.3d 1115, 1120 (9th Cir. 2010) ("*Unlike the 'exceptional ability' visa petition*, the 'extraordinary ability' petition is not dependent on an actual offer for employment in the United States, and is exempt from the time-consuming labor certification process ….") (emphasis added); *United States v. Ryan-Webster*, 353 F.3d 353, 355-56 (4th Cir. 2003); *Kooritzky v. Reich*, 17 F.3d 1509, 1510 (D.C. Cir. 1994).
  The regulations implementing the immigration statute clearly require labor certification for all applicants under 8 U.S.C. § 1153(b)(2)(A) absent an applicable exception. *See* 8 C.F.R. 204.5(k)(4)(i). Under *Chevron*, if Congress has not "directly spoken to the precise question at

would be no need for a national interest waiver from the labor certification requirement, since anyone who qualified for a national interest waiver could simply get a labor certification. *See id.* at 217-218. Thus, "[i]t is not sufficient for the petitioner simply to enumerate the alien's qualifications, since the labor certification process might reveal that an available U.S. worker has the qualifications as well." *Id.* at 218. Nor is it sufficient simply for the alien to seek a job in an important field that suffers from a dearth of U.S. workers, because that problem can also be solved through the labor certification process. *See id.*

Sodipo has not pointed to any qualifications he possesses that go above and beyond those that would be required by the normal, waiver-free process. It may be that the minimum educational requirement in his field is a bachelor's degree, but a master's degree cannot be sufficient to obtain a national interest waiver -- otherwise everyone who qualifies for a second preference employment-based visa through having an advanced degree would also qualify for a national interest waiver. Similarly, the importance of the field he seeks to work in and the groundbreaking work the companies he worked at did are beside the point. Sodipo must show that he himself "clearly present[s] a significant benefit to the field of endeavor." *Id.* The mere fact that he worked as a support engineer at these countries and got at least one positive review, *see* A.R. 314-19, is not enough. Defendants' motion for summary judgment is granted with respect to claim one.

**B. Was Sodipo Entitled to Forgo Submitting an Updated Form ETA-750B?**

Sodipo's employer, when petitioning for an H-1B visa in March 2005, submitted a Form ETA-750B containing Sodipo's then-current work history. *See* A.R. 141-46. Sodipo included a photocopy of this same ETA-750B when he submitted the petition that gave rise to this case in 2010, and argues that this is sufficient under the relevant regulation, which requires that the

---

issue," the Court must defer to the regulation unless it is "contrary to clear congressional intent or frustrates the policy Congress sought to implement." *See Chevron*, 467 U.S. at 842; *Providence Yakima Medical Center v. Sebelius*, 611 F.3d 1181, 1189-90 (9th Cir. 2010). In light of the fact that the agency's requirement of a labor certification is not precluded by the statute and that there is no indication that it is contrary to Congress's intent, the Court defers to the agency's interpretation that a labor certification is generally required for second preference immigrants under 8 U.S.C. § 1153(b)(2)(A).

petitioner "submit Form ETA-750B, Statement of Qualifications of Alien, in duplicate." 8 C.F.R. 204.5(k)(4)(ii). He also contends that a copy of the ETA-750B from 2005 was sufficient, as he had not worked from 2006 to 2010.

It was not arbitrary, capricious, or an abuse of discretion for the AAO to require an updated ETA-750B. Even if Sodipo's employment history from 2005 to 2010 could be gleaned from the briefs that Sodipo submitted to USCIS and the AAO, USCIS is entitled to ask for and receive that information in a standardized form, rather than a legal brief. And it is hardly unreasonable to interpret 8 C.F.R. 204.5(k)(4)(ii) as requiring a current Form ETA-750B, rather than just any Form ETA-750B. The regulation does not specify that the Form ETA-750B has to be the alien's, either, but that, like the requirement that the form be current, is so obvious that it would be absurd to insist that it be expressly included. Defendants' motion for summary judgment is granted with respect to claim two.

### C. Is the Alleged Shortage of Cybersecurity Professionals Sufficient Reason to Grant Sodipo a National Interest Waiver?

Sodipo argues that he is entitled to a national interest waiver because there is a national shortage of cybersecurity professionals. Whether that is true or not, it cannot be the basis for a national interest waiver, since it addresses a problem that is already covered by the usual labor certification requirement. In fact, the Department of Labor has determined that certain occupations are entitled to blanket labor certifications because they lack sufficient U.S. workers, and if cybersecurity were one of them, Sodipo could obtain a labor certification on that basis. *See* 20 C.F.R. § 656.5. To hold that the shortage of cybersecurity professionals warrants excepting Sodipo from the labor certification requirement would place the Court in the position of second-guessing the Department of Labor. The Court will not do so. Defendants' motion for summary judgment is granted with respect to claim three.

9

**CONCLUSION**

The Court grants summary judgment in favor of defendants and directs the clerk to enter final judgment and close this case.

**IT IS SO ORDERED**.

Dated: January 12, 2015

_____
JAMES DONATO
United States District Judge